**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:15-CR-404 HEA NAB |
| | ) | |
| MICHAEL GRADY and | ) | |
| OSCAR DILLON, III, | ) | |
| Defendants. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on Defendants Oscar Dillon and Michael Grady's joint Motions to Dismiss Indictment [Docs. 1352, 2186] and Motion to Dismiss on Speedy Trial [Doc. 2453]. The above matters were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). For the following reasons, the Court will recommend denial of Dillon and Grady's Motions to Dismiss.

**I.    BACKGROUND**

This action began on August 26, 2015, with the indictment of a single defendant Anthony Jordan. [Doc. 1.] A second superseding indictment was returned on January 7, 2016, involving a total of eighteen defendants. A third superseding indictment with twenty- seven defendants was returned on April 14, 2016. Defendants Grady and Dillon were originally charged in the fourth superseding indictment issued on December 1, 2016, which included 34 defendants [Doc. 680]. The fourth superseding indictment charged Grady and Dillon with conspiracy to distribute and possess with intent to distribute five hundred grams or more of cocaine, conspiracy to distribute and possess with the intent to distribute 100 grams or more of cocaine, obstruction of justice,

conspiracy to cause another to avoid prosecution, and conspiracy to conduct financial transactions that involved the proceeds of the unlawful distribution of cocaine [Doc. 680].  The fourth superseding indictment charged seven defendants with death eligible counts.  The grand jury returned a fifth superseding indictment with nine defendants on December 20, 2018 [Doc. 1990]. In the fifth superseding indictment, Grady and Dillon were both charged with conspiracy to distribute and possession with the intent to distribute five kilograms or more of cocaine, obstruction of justice, unlawful flight to avoid prosecution, money laundering, and witness tampering [Doc. 1990].  The undersigned entered multiple orders designating the original indictment and each superseding indictment as a "complex case," as defined in 18 U.S.C. § 3161(h)(7)(B)(ii) [Docs. 186, 360, 476, 765, 2065].  Defendants did not object to the "complex case findings in the fourth and fifth superseding indictments at status conferences held to discuss the matter [Docs. 765, 938, 2065].

On October 6, 2017, Defendant Oscar Dillon filed a Motion to Sever [Doc. 1282].  The undersigned scheduled a hearing on Dillon's motion for October 25, 2017, which was subsequently continued at Defendant's request to November 9, 2017 [Docs. 1303, 1309, 1310, 1312].  Defendant Michael Grady filed a motion for leave to adopt Dillon's Motion to Sever, which was granted by the Court on November 9, 2017 [Doc. 1373].  The hearing was held on November 9, 2017 and the motion taken under submission  [Doc. 1377].  The government filed supplemental briefing on June 28, 2019 stating that they were not opposed to trying Grady and Dillon together separate from the other defendants.

On November 2, 2017, Defendant Michael Grady filed a Motion to Dismiss the fourth superseding indictment under Fed. R. Crim. P. 12(b)(3)(A) alleging that the Government knowingly presented false information to both the Court and the Grand Jury [Doc. 1352].  The

undersigned held evidentiary hearings on Defendant Grady's motion on July 18, 2018, August 20, 2018, August 22, 2018, and February 7, 2019 [Docs . 1771, 1831, 1832, 2061].  Defendants filed a post-hearing memorandum in support of their motion on April 3, 2019 [Doc. 2167] and the Government's post-hearing brief was filed on May 8, 2019 [Doc. 2246].

On May 6, 2018, Defendant Grady filed a motion to compel disclosure of grand jury transcripts [Doc. 1651].  Defendant Dillon then filed motions for leave to adopt Grady's motion to compel disclosure of grand jury transcripts and reply to the government's response, which the Court granted [Docs. 1654, 1655, 1669, 1675].  The Court also granted the Government leave to file a sur-reply, which was filed on June 5, 2018 [Docs. 1671, 1679, 1690].  The undersigned held a hearing on the motion to compel disclosure of grand jury testimony on June 25, 2018 [Doc. 1717].  The motion was granted in part on July 17, 2018 [Doc. 1740].

On October 31, 2018, Grady and Dillon filed a motion to compel testimony and compliance with subpoenas [Doc. 1899].  The Government filed a response [Doc. 1914] and the undersigned held a hearing on February 7, 2019 [Doc. 2078].  The undersigned denied defendants' motion to compel testimony and compliance with subpoenas as to Assistant United States Attorney Michael Reilly and granted defendants' motion to withdraw the remainder of their motion [Doc. 2064].

On April 10, 2019, the undersigned granted Michael Grady's motion for leave to file a second Motion to Dismiss out of time [Docs. 2185, 2186, 2188].  The Government filed a response [Doc. 2246].  On November 26, 2019, the Defendants filed a third joint motion to dismiss for violation of the Speedy Trial Act [Doc. 2453].  The Government filed a response on December 10, 2019 [Doc. 2464].

## II.    MOTIONS TO DISMISS

Defendants seek dismissal of the fourth and fifth superseding indictments.  Defendants were first charged in the fourth superseding indictment in this action.  For limitations purposes, an original indictment remains pending prior to trial, even after the filing of a superseding indictment if it does not substantially broaden or amend the original charges.  *United States v. Yielding*, 657 F.3d 688, 703 (8th Cir. 2011) (citing *United States v. Hance*, 501 F.3d 900, 905 (8th Cir. 2007). "An original indictment remains pending prior to trial, even after the filing of a superseding indictment, unless the original indictment is formally dismissed." *Yielding*, 657 F.3d at 703. The court may dismiss an indictment, information, or complaint, if unnecessary delay occurs in bringing a defendant to trial.  Fed. R. Crim. P. 48(b)(3).

### A.    Motion to Dismiss for Violation of the Speedy Trial Act

Defendants Grady and Dillon filed a Joint Motion to Dismiss the fifth superseding indictment for Violation of the Speedy Trial Act [Doc. 2453].  The government responded [Doc. 2464].  The fourth superseding indictment, which brought Grady and Dillon, into this case was returned on December 1, 2016.  Grady and Dillon were arrested on December 2, 2016.  The fifth superseding indictment was filed on December 20, 2018.  The Court entered multiple orders designating the original indictment and each superseding indictment as a "complex case," as defined in 18 U.S.C. § 3161(h)(7)(B)(ii) [Docs. 186, 360, 476, 765, 2065].  Defendants did not object to the "complex case" findings in the fourth and fifth superseding indictments at status conferences held to discuss the matter [Docs. 765, 2065, 2078].

"A defendant's speedy trial rights are protected statutorily under the Speedy Trial Act as well as constitutionally under the Sixth Amendment." *United States v. Stoddard*, 74 F.Supp.3d

332, 339 (D.D.C.).  "The Speedy Trial Act requires that trial begin within 70 days after a defendant is charged or makes an initial appearance unless the time is stopped for reasons set out in the statute."  *United States v. Bonilla-Filomeno*, 579 F.3d 852, 855 (8th Cir. 2009) (quoting *United States v. Lucas*, 499 F.3d 769, 782 (8th Cir. 2007) (en banc), *cert. denied*, 552 U.S. 1281 (2008)).  "Periods of delay caused by pretrial motions, whether filed by the defendant, codefendants, or the prosecution, are excluded from the calculation of this 70-day time frame, as are continuances granted by the Court in order to best serve 'the ends of justice.'"  *Bonilla-Filomerno*, 579 F.3d at 852 (quoting *United States v. Shepard*, 462 F.3d 847, 863 (8th Cir. 2006)).  Section 3161(h) presents several scenarios where the Court may toll the 70 day time period.

Based on the foregoing, the undersigned finds that Defendants Grady and Dillon's rights under the Speedy Trial Act have not been violated.  First, the Eighth Circuit has held that where multiple defendants are joined for trial and no motion for severance has been granted, the statutory time period does not begin to run until the last codefendant has been indicted or arraigned and exclusions of time attributable to one defendant apply to all codefendants.  *United States v. Patterson*, 140 F.3d 767, 772 (8th Circuit 1998).  "Thereafter all of the defendants are subject to one controlling speedy trial clock and any time periods excluded from the speedy trial calculations for one defendant will be applicable to the other defendants."  *U.S. v. Lightfoot*, 483 F.3d 876, 886 (8th Cir. 2007).  The speedy trial clock has not run for all of the defendants in this action.

Second, the undersigned has made multiple findings that this was a complex case under 18 U.S.C. § 3161(h)(7)(B)(ii), both before and after Grady and Dillon were added as defendants.  The Court asked whether Defendants had any objections to the speedy trial designations.  Defendants did not object to the "complex case findings in the fourth and fifth superseding indictments at status conferences held to discuss the matter [Docs. 765, 938, 2065].

Next, the Court finds that Defendants' Sixth Amendment rights to a speedy trial have not been violated.  "It would be unusual to find the Sixth Amendment has been violated when the Speedy Trial Act has not."  *United States v. Titlbach*, 339 F.3d 692, 699 (8th Cir. 2003).  First, the Court must determine whether the delay between indictment and the motion to dismiss was presumptively prejudicial.  *See United States v. Summage*, 575 F.3d 864, 875 (8th Cir. 2009).  The Court considers (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted the right to a speedy trial, and whether the defendant suffered any prejudice.  *Id.*  The Court considers whether the government or the defendant is more to blame.  *Id.* at 876.

The delay has been a lengthy one.  This case involved multiple defendants, a total of six indictments (two involving these defendants), voluminous discovery, a substantial amount of motion practice initiated by the Defendants regarding discovery, a change in counsel, and multiple evidentiary hearings.  Defendants also requested and received every extension of time that they requested, including a motion for leave to file out of time [Docs. 870, 871, 964, 965, 1014, 1017, 1039, 1110, 1111, 1125, 1198, 1243, 1247, 1248, 1250, 1259, 1270, 1276, 1309, 1310, 1312, 1497, 1502, 1606, 1607, 1888, 1893, 2016, 2020, 2185, 2188, 2222].  Therefore, although the defendants and the Government have sought multiple extensions of time, the reason for the delay weighs against the Defendants.  Defendants did assert their displeasure in being detained in this action multiple times.  On the final factor, the Court finds that the Defendants have not suffered prejudice.  For example, during the time most of this case was pending Dillon was also a defendant in another criminal case in this court.  Based on the foregoing, the undersigned finds that Defendants' rights under the Speedy Trial Act and the Sixth Amendment have not been violated.

**B.      Motions to Dismiss for Due Process Violations by the Government**

      *1.      Motion to Dismiss Fourth Superseding Indictment regarding Cell-Site Data*

Defendant Michael Grady filed a Motion to Dismiss the fourth superseding indictment for due process violations by the Government.  Defendant Oscar Dillon was granted leave to join the motion.  The Defendants allege that the Government and the federal agents assigned to and investigating their case, have engaged in "egregious acts that have substantially prejudiced" them and violated their due process rights.  Specifically Defendants allege that they were charged with offenses the government has records never existed, the government delayed the release of exculpatory evidence, false information was presented to multiple judges to obtain search warrants to support a finding of probable cause, and false testimony was presented to the Court and the grand jury.

The Government responds that Defendants' claims lack merit.  Although the Government concedes that it was mistaken when it represented that the Federal Bureau of Investigation ("FBI") did not obtain historical cell site information related to the search warrant at issue, that mistake does not provide a basis for dismissal of the indictment.  Further, the Government argues that the Defendants were not prejudiced, because the records were not exculpatory and are strongly corroborative of the Government's theory of the case.  The Government contends that the possibility that a cooperating witness "was off by a day or two as to the timing" of meetings with Defendants does not mean the data was exculpatory.

      **a.      Factual Background**

The undersigned held multiple evidentiary hearings and discovery hearings regarding this action.  The witnesses at the evidentiary hearing were John Keep, a records custodian for Sprint;

James Williams, a FBI Telecommunications Specialist, James Gaddy, a St. Charles County Police Detective; Brandon Burke, a FBI agent; Michael Betz, a police officer with the St. Louis Metropolitan Police Department and a FBI Task Force Officer; Kevin Corcoran, St. Louis Metropolitan Police Department Detective; and Bastian Freund a FBI special agent.   The undersigned found the testimony of these witnesses credible.  Several exhibits were also entered into evidence.

### i.      Information supplied by Cooperating Witness

The indictments in this action involve a drug trafficking organization, which supplied cocaine to several other organizations and other individuals, including eventual cooperating witnesses.  On January 7, 2016, the Grand Jury returned the first Superseding Indictment in this action.  On January 13, 2016, investigators executed the search warrants and arrest warrants of the defendants involved in the first superseding indictment.  Cooperating Witness A (CW-A) was one of the defendants named in the first superseding indictment.  On January 26, 2016, investigators executed a second round of search warrants targeting CW-A's drug trafficking organization.  The investigators were unable to arrest CW-A.  Investigators arrested CW-B, who expressed his desire to cooperate in the investigation.  CW-B then began to provide information to the investigator regarding how Defendants Grady and Dillon assisted  CW-A in fleeing after being indicted.

On December 1, 2016, the Grand Jury returned a fourth superseding indictment that added Grady and Dillon to the case.  Grady was taken into custody.  The following day, December 2, 2016, Officer Eric Lanham sought a search warrant of Grady's home.  Officer Lanham swore in an affidavit in support of that search warrant that "On approximately January 10th or 11th, 2016,

Michael Grady and Oscar Dillon contacted CW-6[1] while attempting to locate [CW-A]." The affidavit further avers that

> Later that same day, Dillon and Grady re-contacted CW-6, and stated words to the effect that [CW-A] needs to be gone for at least 18 months and then turn himself in.  Dillon also stated words to the effect that it would be better for [CW-A] to be the only defendant left by himself, because he would have a better change of fighting his case if he was the only defendant.  Grady and Dillon also stated words to the effect that they wanted to explore the court's discovery.

The preceding statement was used in support of multiple search warrants.

### ii.    Disclosure of Cell Site Records

John Keep, a records custodian for Sprint Corporation testified regarding the procedures of receiving, retrieving, and submitting electronic data responsive to court orders and subpoenas. Keep's testimony took place on July 18, 2018.

The L-Site website is a website that Sprint uses as a law enforcement portal to receive legal demands and comply with those legal demands.   Sprint creates electronic records for each subscriber, including toll information and cell site records.  Toll information, also referred to as call detail records, is a list of transactions of a telephone for the inbound and outbound phone calls as well as the inbound and outbound text messages information, but not the content of those text messages.  Toll information may also include the duration of the contacts made.  A cell site record is associated with Sprint's call records.  It is the cell tower that processed the phone call.  For example, if you were to make a phone call, it would connect to the closest cell tower, and that is what would be recorded for billing and engineering purposes.  The records produced by Sprint for cell site requests include eleven columns of information:

---

[1] CW-6 is the same individual referred to as CW-B.

(1) the number that made the phone call or sent the text message,

(2) the number that received the phone call or text message,

(3) dialed digits indicating the telephone number that was actually entered to place the call (specific to calls not text messages),

(4) the mobile role (whether incoming, outgoing, routed, or undetermined call or text),

(5) start date and time of when phone call started or when text message was sent,

(6) end date and time for phone call,

(7) duration of call in seconds,

(8) call type (text message or voice call),

(9) NEID (the switch that processed the phone call or the text message),

(10) the first cell (the cell tower and the sector of the cell tower that the phone call started on), and

(11) the last cell (the cell tower and sector on which the call ended).

Columns 1 through 9 represent normal call records.  Columns 10 and 11 represent the cell sites explicitly.  The cell sites indicate generally the tower that the phone was closest to when the call started and ended.  If a tower is available to make the call, meaning it is not at capacity, it would connect to that tower.  Further, if a person starts a phone call and drives across town, the records do not indicate all of the towers that the person connected to, but it will show the tower the call started on and the tower connected to at the very end.  If a court order directs production of cell site location, the first cell and last cell information will appear in the date provided to the law enforcement agency.

NEID is the acronym for Network Element ID, and it indicates, which switch processed the call.  A switch is basically a device that connects calls for a specific area.  A switch may cover a very large geographic area.  For example, the NEID 213 covers all of Missouri, Iowa, and most of Kansas.  The NEID number is included with all call records.  It is not possible to locate a phone

with any specificity with the NEID number and Sprint does not consider it phone location information.

Law enforcement requests information from Sprint's L-Site in the following manner.  First, the user would log in and go through prompts in the system to create a case.  The user would then enter a research time frame that they are requesting the record, the request type(s) (*e.g.*, subscriber information or call records).  Next, the user would upload a copy of the legal demand.  Once the legal demand is loaded, Sprint receives the case.  After the legal demand is received by Sprint, Sprint reviews the legal demand to ensure that it authorizes everything in the request.  Then, the records are uploaded as requested.

When a case is available for the user to access, there is a file folder icon with a green arrow that indicates that the case package is available for download, but has not yet been downloaded. After the user downloads the case package, the green arrow disappears.  Sprint does not log when a user downloads information.  Sprint only logs that the information was downloaded.  Sprint only needs to know that it complied with the court order or legal demand.  It does not need to know when the records were actually downloaded.

When a user accesses a record, the default parameters show their cases for the previous three months.  A user may change the setting to view cases for the previous three years.  During Keep's tenure receiving customer service calls for Sprint's L-Site, at least weekly he received questions about accessing cases outside the three-month period.  He would then advise the user to change the historical data range settings to view the full three years available history.

On February 5, 2016, a United States Magistrate Judge issued a precision location warrant for Grady's cell phone at the request of the FBI.  The warrant and order allowed for call detail records, precision location information (including global position "GPS"), and cell site location

information be provided to the FBI.  The warrant and order also authorized use of a pen register, trap-and-trace, and cell site simulator.  The St. Louis Metropolitan Police Department also served an order for the historical cell site data for Grady's cell phone.  On February 9, 2016, FBI Specialist James Williams served the warrant and order on Sprint.  On February 10, 2016, Sprint notified FBI specialist James Williams that the data was available for download.

On December 9, 2016, Defendant Grady filed a letter requesting discovery from the Government.  The discovery letter requested a broad range of discovery including statements, confidential information, anything seized pursuant to any search, and grand jury transcripts and minutes [Doc. 718].  On August 21, 2017, Defendant Grady filed a Motion to Compel Production of Cellular Telephone Data [Doc. 1169].  In that motion, Grady requested that the Court order the Government to provide information regarding the cell site simulator records and information relating to Grady's telephones and pen register, trap and trace information.  The Government produced discovery regarding all defendants on August 25, 2017.

On August 28, 2017, Defendant Grady filed a Second Motion to Compel Production of Cellular Telephone Data Instanter and to Hold in Abeyance the Deadline for filing Pretrial Motions until such Discovery is produced.  [Doc. 1201].  The Court granted Defendant Grady an extension of time to file pretrial motions until the discovery was produced [Doc. 1216.].  The Government responded to Grady's motion asserting that the motion to compel was much broader than the initial request for information [Doc. 1223].  The Government then stated that the materials were voluminous and requested leave to produce them at a later date.  Finally, the government's response stated, "*investigators did not request Grady's historical cell site data*" [Doc. 1223 at 3]. Defendant filed a Reply asserting that the February 5, 2016 search warrant and order directed Sprint to disclose the specific historical cell site data.  After a continuance requested by Grady was

granted by the Court, a hearing was held on Grady's motions on September 25, 2017.  At the hearing, the Government stated that it did not have the data and requested that the Court order Sprint to produce the data that was ordered in the February 5, 2016 search warrant.  On the same date, the Court granted the Government's request for an order directing Sprint to produce the data and denied Grady's discovery motions as moot [Doc. 1254].  The undersigned issued the order directing Sprint to produce the data in the February 5, 2016 search warrants on September 28, 2017 [Doc. 1265].  Sprint complied with the Court's September 28, 2017 order and provided the letter and data that was originally sent to Williams on February 10, 2016.

The cell site data produced by Sprint on February 10, 2016 shows that the phone calls made from Grady's cellular phone on January 10th and 11th in 2016 used cell phone towers in Orlando, Florida.  Therefore, the assertion in the search warrants for the affidavits that CW-6 met with Grady in St. Louis on those specific dates are not true.  The data produced by Sprint also indicates that Sprint disclosed to the Government an additional 15 days of records that were outside the scope of the search warrant and order.

Defendants then filed motions to dismiss alleging the Government engaged in misconduct, because information provided in support of the search warrants and the grand jury testimony regarding a meeting between CW-6 and Grady were not true.  The Government responded that the non-disclosure was a mistake [Doc. 1401].  In support of its response, the Government provided an affidavit from Williams that stated that he works as a Telecommunications Specialist for the FBI [Doc. 1401-1 at 1].  In the affidavit Williams averred that he assists Special Agents in serving orders on telecommunications companies, including Sprint.  He further attested that he submitted the warrant and order to Sprint using L-Site.  He then stated that he did not request the call detail records with cell site prior to February 5, 2016 although the order authorized it, because the FBI

agent did not request it.  He stated that records obtained from Sprint by the FBI on November 8, 2017 verify that he only requested records from the L-Site with cell site information from February 5, 2016 to March 20, 2016.  He further stated that he believed that if he did not request the call detail records and cell site information prior to the date the warrant and order was issued, the historical information would not be provided by Sprint.  He stated that he later learned, on November 8, 2017, through a Sprint Electronic Surveillance Technician, that Sprint provides the entire time period authorized by the warrant and order regardless of which dates were input by the requester.  He also stated that he learned that Sprint had provided the FBI with the historical cell site data and that the FBI had downloaded the data.  He averred that it was not his practice to examine and review records provided by Sprint and he has no memory of downloading or reviewing the historical call detail records with cell site records.  Williams stated that after receiving a request from an agent to download the documents, it was his practice to send them to the case agent by e-mail.  Williams finally averred that he has not identified any e-mails forwarding the records to the case agent, co-case agent, analyst, or anyone else involved in the investigation.

On May 6, 2018, Defendant Michael Grady filed a Motion to Compel Disclosure of Grand Jury transcripts [Doc. 1651].  Dillon was granted leave to join in Grady's Motion to Compel [Doc. 1655].  In support of the motion, Defendants sought disclosure of grand jury testimony of any agents who testified relating to Michael Grady.  The Government opposed the motion stating that it had exceeded its discovery obligations by previously producing the grand jury testimony of two primary cooperators and a Jenks Act statement of a third cooperator [Doc. 1661].  Defendants filed a Reply Memorandum stating that the Government presented information in 9 search warrants that Grady was present at a meeting in St. Louis on dates the cell site data he showed was not there [Doc. 1666].  Further, the Government insisted it did not have the records when the Government's

14

own records show that they had requested the information and the information was in their possession.  Grady contends that none of the information was used to confront the cooperating witnesses about the errors in their statements.  These cooperating witnesses testified before the grand jury in support of the Government's case for an indictment.  The Government was granted leave to file a sur-reply.  In its Sur-Reply, the Government stated that Defendants' legal positions ignored the plain language of the affidavits, which used the word approximate before the dates given, relied on "hypertechnical" reading of the affidavits, and disregarded the "plethora of incriminating evidence" that corroborates the testimony of the cooperators [Doc. 1690].  The Government further stated that there was no pattern of misrepresentation on behalf of the Government.  The undersigned held a hearing on Defendants' motion for disclosure on June 25, 2018.  On July 17, 2018, the undersigned partially granted the Defendant's Motion to Compel by ordering the disclosure of portions of Thomas Llewellyn's grand jury testimony from December 1, 2016.

Next, the undersigned held three evidentiary hearings on Defendants' Motion to Dismiss [Doc. 1352] on August 21, 2018, August 22, 2018, and February 7, 2019.  James Williams, James Gaddy, Brandon Burke, Michael Betz, Kevin Corcoran, and Bastian Freund provided testimony regarding the FBI and St. Louis Metropolitan Police Department's investigation of the Defendants and the historic cell site data at issue in this case.

In the meantime, the Defendants filed a Motion to Compel Testimony and Compliance with Subpoenas [Doc. 1899] and the Government filed a fifth superseding indictment adding additional charges against Grady and Dillon on December 20, 2018 [Doc. 1990].  On February 7, 2019, the undersigned held a hearing on Defendants' Motion to Compel [Docs. 2078, 2079].  The

undersigned denied Defendants' Motion to Compel Testimony and Compliance with Subpoenas [Docs. 2064, 2078, 2079].

### b.      Conclusions of Law

The Fifth Amendment of the United States Constitution protects defendants from deprivation of life, liberty, or property without due process of law. "A due process violation occurs whenever the government 'suppresses or fails to disclose material exculpatory evidence.'" *United States v. Elmardoui*, 611 F.Supp.2d 872, 876 (N.D. Iowa July 5, 2007) (citing *Illinois v. Fisher*, 540 U.S. 544, 547 (2004)). "[Suppression] of evidence by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Further, the government must not knowingly or recklessly use false testimony. *Smith v. Groose*, 205 F.3d 1045, 1049 (8th Cir. 2000).

"If the court finds that the government has engaged in conduct that 'shocks the conscience,' the court may utilize the 'outrageous government conduct' rule and dismiss criminal charges to avoid a Fifth Amendment due process violation." *Elmardoudi*, 611 F.Supp. at 875. "Outrageous conduct that shocks the conscience can require dismissal of a criminal charge, but only if it falls within the 'narrow band' of the most intolerable government conduct." *United States v. Boone*, 437 F.3d 829, 841 (8th Cir. 2006). "Where a defendant alleges prosecutorial misconduct, dismissal of the indictment is proper only when the defendant demonstrates flagrant conduct and substantial prejudice." *United States v. Darden*, 688 F.3d 382, 387 (8th Cir. 2012).

First, the undersigned will address Defendants' contention that the Government intentionally withheld discovery, specifically the historic cell site records from them. Defendants assert that they have been prejudiced because the discovery would have provided exculpatory

evidence that the confidential witnesses provided false testimony regarding an alleged meeting between Grady and confidential witnesses on January 10th and 11th of 2016 in St. Louis, Missouri.

"A district court has broad discretion to sanction a party for failure to comply with discovery orders." *United States v. Sims*, 776 F.3d 583, 585 (8th Cir. 2015). When reviewing whether the sanction imposed evinces an abuse of discretion, the court examines three factors: (1) the reason, or reasons, for the delay in the production of the evidence, including whether the government acted in bad faith; (2) whether the defendant was prejudiced; and (3) whether a lesser sanction would secure future compliance by the government. *Sims*, 776 F.3d at 585-86 (citing *United States v. Amaya*, 750 F.3d 721, 727 (8th Cir. 2014)). Dismissal of an indictment is a disfavored remedy. *United States v. Manthei*, 979 F.2d 124, 126 (8th Cir. 1992). "Dismissing an indictment is appropriate only if the government's conduct has substantially prejudiced the defendant." *United States v. DeCoteau*, 186 F.3d 1008, 1010 (8th Cir. 1999) (citing *United States v. Tulk*, 171 F.3d 596, 598 (8th Cir. 1999)).

In this case, the undersigned finds that the Defendants have not been substantially prejudiced by the late disclosure of the cell site data. First, Defendants have received the data in time for their use at trial and at this point have had access to the data for over two years. Second, the evidence does not reach the bounds of being exculpatory. Defendants focus on the fact that the historical cell site data indicates that Grady was in Florida on January 10th and 11th of 2016. Defendants contend that the cell site evidence contradicts CW-B's statement that he met with Grady on one of those dates. Defendants label this discrepancy as exculpatory evidence. Defendants' contention is not a fair reading of the statement's actual wording in the affidavit. The affidavit uses the word "approximately." The word "approximately" does not mean exactly. Oxford English Dictionary defines "approximate" as "very near, in position or in character" or

"nearly approaching to accuracy; fairly reasonably or correct."  Use of the modifier is important, especially as in this case, the cell site data also shows that Grady's cell phone used cell towers in St. Louis beginning on January 12, 2016.  Further, the statements from the confidential witnesses regarding their meetings with Grady and Dillon in January 2016 were not the only pieces of evidence used to support probable cause for the warrants.  Defendants' assertions that the Government's case focuses on the encounters with CW-B on those dates is not accurate.

Third, the undersigned finds credible the testimony of the FBI personnel and St. Louis City officers that the historical cell site data regarding Grady was not the focus of their investigation and they had no recollection of downloading it before Defendants' discovery requests.  Defendants have presented no evidence beyond speculation that the Government acted in bad faith.

Fourth, defendants have not established that the Government made false representations to the court and the grand jury.  "Grand jury proceedings are afforded a strong presumption of regularity, and a defendant seeking to overcome that presumption faces a heavy burden."  *United States v. Wilson*, 565 F.3d 1059, 1069 (8th Cir. 2009) (quoting *United States v. Hintzman*, 806 F.2d 840, 843 (8th Cir. 1986)).  "The remedy of dismissal of an indictment due to grand jury abuse is appropriate only upon a showing of actual prejudice to the accused."  *Wilson*, 565 F.3d at 1070 (quoting *United States v. Kouba*, 822 F.2d 768, 774 (8th Cir. 1987)).  Defendants have failed to meet this standard.  Defendants have not presented evidence of actual prejudice.  Whether the prosecution witnesses' testimony may be impeachable does not rise to the level of dismissal of an indictment.  At trial, Defendants can attempt to impeach the confidential witnesses about the dates and times of meetings with the Defendants.

        **2.**        *Motion to Dismiss for Intentional Delay and Prosecutorial Vindictiveness*

Finally, Defendants allege that the prosecution intentionally delayed the filing of the fifth superseding indictment and engaged in prosecutorial vindictiveness.  "To show preindictment delay violated the Due Process Clause, a defendant must first show the delay actually and substantially prejudiced the defendant." *United States v. Benshop*, 138 F.3d 1229, 1232 (8th Cir. 1998).  "If the defendant establishes actual, substantial prejudice, then the court balances the reasons for the delay against the prejudice shown." *Id.*  "Absent a showing that the government acted intentionally to harass or gain a tactical advantage, no due process violation may be found." *Id.* at 1232-33.  Defendants have not met their burden to show that they were prejudiced by the timing of the fifth superseding indictment.  Defendants claim that they have been prejudiced, because the fifth superseding indictment occurred at the conclusion of the hearing on the motion to dismiss and they will have to re-litigate an issue that should have been included in the first Motion to Dismiss.  Defendants have engaged in a substantial amount of motion practice, including several discovery motions and three motions to dismiss.  There is no evidence that Defendants have been unable to file any motions regarding any of the indictments.  Further, Defendants have presented no evidence beyond the speculative level that the Government acted intentionally to harass them or gain any tactical advantage.

"Due process prohibits a vindictive prosecutor from punishing a criminal defendant solely for exercising his statutory right to appeal by bringing a more serious charge against him prior to the trial de novo." *United States v. Chappell*, 779 F.3d 872, 879 (8th Cir. 2015).  "In order to demonstrate prosecutorial vindictiveness, a defendant must show that the superseding indictment containing the additional charges was sought in retaliation for exercising constitutional statutory

rights."  *Id.*  "A defendant can prove such impermissible prosecutorial vindictiveness with objective evidence of the prosecutor's 'vindictive or improper motive' in increasing the number or severity of charges."  *Id.*  "Absent such evidence, a 'defendant may, in *rare* instances, rely upon a presumption of vindictiveness.'"  *Id.* (citing *United States v. Kriens*, 270 F.3d 597, 602 (8th Cir. 2001)) (emphasis in original).  "The defendant's evidentiary burden is a heavy one, and [the Court] is mindful of the broad discretion given to prosecutors in carrying out their duty to enforce criminal statutes."  *Id.*

Defendants have not met the heavy burden to prove prosecutorial vindictiveness. Defendants rely on the timing of the fifth superseding indictment less than 60 days after Defendants filed a motion to compel the testimony of Assistant United States Attorney Michael Reilly and seven days after the Court set the final hearing on Defendants' previously filed motions to dismiss.  Defendants state that "based on timing alone, the Court should conclude that the superseding indictment was filed with vindictive intent."  The Eighth Circuit has expressly rejected Defendants' contention that "timing alone" is sufficient to support a finding of prosecutorial vindictiveness.  *See Chappell*, 779 F.3d at 881 ("We also reject Chappell's unsupported assertions that timing alone "gives rise to a reasonable likelihood of vindictiveness" and "[t]he presumption applies whenever the prosecution has knowledge of the facts essential to the other charges at the time of the original indictment, trial, and conviction").  Therefore, the undersigned recommends that this motion be denied as well.

## III.    CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, the undersigned recommends that Defendants' motions to dismiss the fourth and fifth superseding indictments be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Motion to Dismiss Indictment be **DENIED** [Doc. 1352].

**IT IS FURTHER RECOMMENDED** that Defendants' Motion to Dismiss the Fifth Superseding Indictment be **DENIED** [Doc. 2186].

**IT IS FURTHER RECOMMENDED** that the Motion to Dismiss Indictment for Violation of the Speedy Trial Act [Doc. 2453] be **DENIED**.

The parties are advised that they have fourteen (14) days in which to file objections to this recommendation and determination.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.  *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).


NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 19th day of March, 2020.