UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. S5-4:15 CR 404 HEA-NAB |
| | ) | |
| MICHAEL GRADY, and | ) | |
| OSCAR DILLON, III, | ) | |
| | ) | |
| Defendants. | ) | |

### THE GOVERNMENT'S JOINT RESPONSE TO DEFENDANTS' OBJECTIONS TO THE COURT'S REPORT AND RECOMMENDATIONS

Comes now the United States of America by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Michael A. Reilly, Assistant United States Attorney for the Eastern District of Missouri, for its Response To Defendants' Objections to the Report and Recommendation (Docs. # 2615, 2616, 2617), states as follows:

### I.    INTRODUCTION

The District Court, after conducting *de novo* review of the extensive record, should adopt the Report and Recommendation (Doc. # 2586, R&R) denying Defendants' Motion to Dismiss Indictment (Doc. # 1352), Motion to Dismiss the Fifth Superseding Indictment (Doc. # 2186), and Motion to Dismiss Indictment for Violation of the Speedy Trial Act (Doc. # 2453).   In the interest of judicial economy, the Government incorporates by reference its comprehensive Joint Response to the Defendant's Brief in Support of Their Motions to Dismiss the Indictment and Defendant Michael Grady's Motion to Dismiss the Fifth Superseding Indictment (Doc. # 2246, "Joint Response (2246)"), and the Response to Defendant's Joint Motion to Dismiss Fifth Superseding Indictment for Violation of the Speedy Trial Act) (Doc. # 2464, "Response STA (2464)").

1

Although not material to the findings, Defendant Grady correctly asserts that he requested that the Court issue an order to Sprint to disclose cell phone data records (Doc. # 2616, p. 4; 2583, p. 13).  The Government moved to modify the form of the order, and the Court issued the order for the records, which Defendant attached to his Motion to Dismiss (Doc. # 1262, 1265, and 1352). The Court may also supplement the existing complex case/ends of justice findings regarding the complexity of the issues under advisement to the Court in the R&R, *infra* at 11.

## II.     STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1), "[w]hen a party objects to a Report and Recommendation concerning a motion to suppress in a criminal case, the court is required to 'make a de novo determination of those portions of the report or specified findings or recommendations to which objection is made.'" *United States v. Walker*, No. 4:18CR00825 AGF, 2020 WL 1060531, at *1 (E.D. Mo. Mar. 3, 2020) (*quoting United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003)). However, this statutorily prescribed review "only means a district court 'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Simeon*, 115 F.Supp.3d 981, 993-94 (N.D. Iowa 2015) (*quoting United States v. Raddatz*, 447 U.S. 667, 675 (1980)). In doing so, the court "may accept, reject, or modify" challenged findings and "may also receive further evidence or recommit the matter to the magistrate judge with instructions." *United States v. Hayden*, 759 F.3d 842 (8th Cir. 2014) (citation omitted). For any uncontested portion of the R&R, the court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Simeon*, 115 F. Supp. 3d at 994-95 (citation omitted).

## III.     PROCEDURAL HISTORY

The record of the procedural history establishes the complexity of the proceedings, the thorough nature with which Judge Baker considered the issues, and the complexity, breadth, and number of issues under advisement for consideration in the R&R.

On December 1, 2016, the Grand Jury returned the fourth superseding indictment in this matter, which charged Michael Grady ("Grady") and Oscar Dillon, III ("Dillon") with (1) conspiracy to distribute cocaine and heroin, counts three and four respectively, in violation of Title 21, United States Code, §§ 841(a)(1) and 846; (2) Dillon, Grady, Derrick Terry, and Charda Davis ("Davis") were charged with obstruction of justice, acting together, in count twenty-eight, in violation of Title 18, U.S.C., §§ 2 and 1512(c)(2); (3) Terry, Grady, Dillon, and Davis were charged with unlawful flight to avoid prosecution, acting together, in count twenty-nine, in violation of Title 18, U.S.C., §§ 2 and 1073; and (4) Terry, Grady, Dillon, and Stanford Williams were charged with conspiracy to commit money laundering in count fifty-one, in violation of Title 18, U.S.C., § 1956.   On December 20, 2018, the grand jury returned the fifth superseding indictment that charged Grady and Dillon with similar but renumbered counts and also charged Grady with witness tampering in violation of Title 18, U.S.C., § 1512(b)(1) for events occurring on or about December 2-8, 2016, in Lincoln County, Missouri.

**1.  The Motion to Dismiss the Indictment**

On August 21, 2017, defendant Grady filed a motion to compel historical cell site data referenced in search warrant, 4:16-MJ-07061-SPM, a warrant authorizing the collection of historical and prospective cell site data for (314)766-2083.  Initially, the government mistakenly represented to the Court that the Federal Bureau of Investigation ("FBI") did not obtain historical cell site information related to 4:16-MJ-7061-SPM.  On September 28, 2017, the Court ordered Sprint to produce the historical cell site data as well as the original data produced in response to

the search warrant, 4:16-MJ-07061-SPM (Doc. # 1265).  Sprint complied with the order and produced the historical cell site data to defendant Grady.  Defendant Grady acknowledged receipt of the records from Sprint and defendant Grady attached the actual historical cell site records in question to his Motion to Dismiss as Exhibit 2 (Doc. #1352, exhibit 2).  Defendants were in possession of the historical cell site records presumably since at least November 2017.

On November 2, 2017, Defendant Grady filed his Motion to Dismiss the Indictment, alleging a discovery violation and "outrageous government conduct" regarding the non-disclosure of historical cell site records for Grady's cell phone (Doc. #1352).  On November 8, 2017, defendant Dillon moved to adopt Grady's Motion to Dismiss (Doc. #1368).

On December 1, 2017, the government filed its lengthy Response to Defendants' Motion to Dismiss the Indictment (Doc. # 1409, 1410 (26 pages)).  The government acknowledged its mistake with regard to the possession of the historical cell site records.  The government argued that such a mistake did not constitute any basis to dismiss the indictment as the records are not exculpatory and that defendants were not prejudiced in that they obtained the records in time to make use of them.

On December 12, 2017, Grady filed his Reply to the Government's Response to his Motion to Dismiss the Indictment (Doc. # 1430).  In his reply, Grady expanded his claims and alleged misconduct in the form of information presented to the grand jury, asserting the baseless claim that the government knowingly presented false information to the grand jury (Doc. # 1430, pp. 1, 5-6).  Defendants alleged that the government misrepresented facts in applications for search warrants and asserted that the historical cell site information for Grady's phone supported the assertion that the meeting between Defendants and a cooperating witness did not occur.

4

On December 22, 2017, the government filed a surreply (Doc. #1457).  The government maintained that to the extent the United States did not believe it was in the possession of historical cell site records, it was a mistake and not intentional misconduct, and is not proper grounds for dismissal of the Indictment.

In May and June 2018, defendants filed their Motions to Compel Production of Grand Jury testimony in relation to the testimony of Detective Thomas Llewellyn, and the government filed its Reply and Surreply, which the government incorporates herein by reference (Doc. #1651, 1654, 1661, 1666, 1669, and 1690).   On July 17, 2018, the Court ordered the disclosure of Det. Llewellyn's Grand Jury testimony, in part (Doc. # 1740).

On July 18, 2018, Defendants' Motion to Dismiss was heard in part. Sprint Records Custodian John Ryan Keep ("Mr. Keep") testified for the United States.  On that date, the hearing was continued to August 21, 2018, and August 22, 2018.  At that time, James Williams ("Mr. Williams"), James "J.D." Gaddy ("TFO Gaddy"), and Michael Betz ("SFO Betz"), testified for the United States. Special Agent Brandon Burke ("Agent Burke") testified for Defendants.

At the August 21, 2018 hearing, counsel, for the first time, announced their intention to call AUSA Reilly as a witness in pursuit of their meritless Motion to Dismiss.  At this time, AUSA Reilly had not been subpoenaed by the defense (See August 21, 2018 transcript at p. 4).  This necessarily implicated the *Touhy* procedures and additional motions and lengthy briefs, causing substantial procedural delay in the case.  *See United States ex rel Touhy v. Ragen*, 340 U.S. 462 (1951) Defendants submitted a *Touhy* letter was submitted for the testimony of AUSA Michael Reilly, TFO Eric Lanham and Det. Thomas Llewellyn.

On September 17, 2018, the Court ordered that Defendants file their *Touhy* memorandum by September 24, 2018. On September 21, 2018, Defendants sent the Government their letter in

5

compliance with *United States ex rel Touhy v. Ragen*, 340 U.S. 462, listing a summary of testimony sought from Drug Enforcement Administration Task Force Officer Eric Lanham (hereinafter "TFO Lanham") and Assistant United States Attorney Michael Reilly (hereinafter "AUSA Reilly").

On October 1, 2018, Assistant United States Attorney Steven K. Luther responded to Defendants' *Touhy* letter, wherein the Government set out the reasons for not authorizing the testimony of AUSA Reilly and TFO Lanham.   On October 31, 2018, after having requested additional time, Defendants filed their Joint Motion to Compel Testimony and Compliance with Subpoenas (Docs. # 1888, 1899).  On November 16, 2018, the United States filed its Response to Defendants' Motion to Compel Testimony (Doc. # 1914 (31 pages)).  On December 13, 2018, the Court set the Motion to Compel for a hearing on February 7, 2019, the date to which the evidentiary hearing was continued (Doc. # 1981).  On December 20, 2018, as previously stated, the grand jury returned the Fifth Superseding Indictment (Doc. # 1989, 1990).

On February 7, 2019, the Court received further evidence in relation to Defendants' motions; Detective Kevin Corcoran ("Det. Corcoran") and Special Agent Bastian Freund ("Agent Freund") testified. Also, on that date, without explanation, the Defendants withdrew their motion to compel TFO Lanham and Det. Llewellyn to testify. On that date, the Court denied Defendant's motion to compel the testimony of AUSA Michael Reilly.

On April 3, 2019, defendants filed their Brief in Support of their Motions to Dismiss Indictment (Doc. # 2167 (33 pages)). On April 9, 2019, Defendant Grady filed his Motion to Dismiss the Fifth Superseding Indictment (Doc. # 2186 (9 pages)). Counsel fully availed themselves of the necessary time to raise additional and extensive claims upon which to dismiss the indictment.

6

On April 24, 2019, after attempting to resolve matters related to the production of Defendants' motion hearing exhibits, the government filed its Motion to Produce Defendants' Motion Hearing Exhibits and for Extension of Time to Respond to Defendants' Brief in Support of Motion to Dismiss Defendant Grady's Motion to Dismiss (Doc. 2218).

On May 8, 2019, the United States filed Joint Response to Defendant's Brief in Support of Their Motions to Dismiss the Indictment and Defendant Michael Grady's Motion to Dismiss the Fifth Superseding Indictment (Doc. # 2246, "2246 Joint Response").  This extensive response was an omnibus reply to the multiple complex and ever-evolving claims raised by Defendants and litigated over a period of approximately eighteen to twenty months.  The complexity of the issues and evidence set forth in the response, and under advisement by the Court, is self-evident.

### 2.  The Motion for Severance

On October 6, 2017, Defendant Dillon filed a Motion for Severance (Doc. # 1282).  On October 17, 2017, the United States responded to the Motion for Severance, which among other things, asserted that joinder was proper and that it was premature to grant severance due to the procedural posture of the case (Doc. # 1300, pp. 13-14).  On June 28, 2019, the United States filed its Supplemental Briefing on the Issue of Severance, taking the position that Dillon and Grady should be tried together, but separate from other defendants in the larger case (Doc. # 2288).  The United States, in this brief pleading, never suggested that the case against Dillon and Grady was not complex.  The breadth and duration of the proceedings in relation to Defendants' pretrial motions unequivocally speaks to the complexity of the case.

### IV.   ANALYSIS

### A.  <u>Motions to Dismiss for Alleged Violations of the Speedy Trial Act</u>

7

The record establishes that the Court properly denied Defendants' Joint Motion to Dismiss Fifth Superseding Indictment for Violation of the Speedy Trial Act ("Motion to Dismiss STA," Doc. # 2453, 2464, 2586).   The Court's legal conclusions are supported by a correct assessment of the procedural history of the case (R&R at 1-6), the relevant "complex case" findings, and the correct legal conclusions.  The extensive issues under advisement to the Court were so unusual and complex, consistent with the complex case finding pursuant to § 3161(h)(7)(B)(ii), that the time under advisement should be excluded from the Speedy Trial Act time calculation.

"The Speedy Trial Act requires that trial begin within 70 days after a defendant is charged or makes an initial appearance unless the time is stopped for reasons set out in the statute." *United States v. Bonilla-Filomena*, 579 F.3d 852, 855 (8th Cir. 2009) (*quoting United States v. Lucas*, 499 F.3d 769, 782 (8th Cir. 2007) (en banc), cert. denied, 552 U.S. 1281 (2008)).  "Periods of delay caused by pretrial motions, whether filed by the defendant, codefendants, or the prosecution, are excluded from the calculation of this 70-day time frame, as are continuances granted by the Court in order to best serve 'the ends of justice.'" *Bonilla-Filomena*, 579 F.3d at 852 (*quoting United States v. Shepard*, 462 F.3d 847, 863 (8th Cir. 2006)).  Judge Baker noted in the that § 3161(h) outlines several scenarios that toll the 70 day time period (R&R at 5).

The Speedy Trial Act excludes certain time periods from counting towards the seventy day deadline, including "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(6).  *See, e.g., United States v. Patterson*, 140 F.3d 767, 772 (8th Cir. 1998).  The statutory time period does not begin to run until the last codefendant has been indicted or arraigned and exclusions of time attributable to one defendant apply to all codefendants.  *Id.* "Thereafter all of the defendants are subject to one controlling speedy trial clock and any time

8

periods excluded from the speedy trial calculations for one defendant will be applicable to all other defendants." *United States v. Lightfoot*, 483 F.3d 876, 886 (8th Cir. 2007).  Judge Baker correctly noted that the speedy trial clock has not run for all of the defendants in this case (R&R at 5).

Moreover, Defendants' motion to dismiss on Speedy Trial Act grounds should also be denied because limitations ordinarily imposed by the Speedy Trial Act are not applicable in this complex case, particularly considering the Court's findings pursuant to 18 U.S.C., § 3161(h)(7)(B)(ii). Therefore, the time limits imposed by the Speedy Trial Act do not apply. *See United States v. Gatling et al.*, No. 4:14-CR-88 RWS (SPM), Doc. # 652 at 27 (E.D. Mo. Dec. 27, 2018).  The time limits imposed by the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161-3174 (1976) ("the Speedy Trial Act") do not apply to the pending motions where there are clear speedy trial findings citing that this case is "complex" within the meaning of Title 18, U.S.C., § 3161(h)(7)(B)(ii) (Doc. # 186, 360, 476, 765, 2065).  Defendants did not object to the "complex case" findings relative in the Fourth and Fifth Superseding Indictments (Doc. # 765, 2065, 2078; R&R at 4).  Instead, they continued their extensive motion practice, filing lengthy briefs which expanded their arguments, and the number of issues before the Court. [1]  In April 2019, Defendants

---

[1] Defendants' assertion that Dillon's Motion for Severance should be taken as an objection to the complex case finding (Doc. # 2615, pp. 3-4; 2453, p. 7) simply defies logic, and should be rejected. A review of the actual motion for severance does not contain language objecting to the relevant complex case findings, but instead discusses "spillover evidence" and unfair prejudice (Doc. # 1282, p. 7).  This is borne out by the fact that defendants never objected to the subsequent complex case finding (Doc. # 2065), but continued to avail themselves of an extensive motion practice seeking to have the indictment dismissed.  Defendant Dillon asserts that in November 2017, he took the position that "if the Court decides to sever this case, we would be wanting to go to trial right away." (Dillon Objection, Doc. # 2615, p. 4).  Notwithstanding that assertion, Defendants then chose to fully engage in the protracted motion practice described herein.  Moreover, even if severance was granted, this remains a complex case.  Defendants, by pleading not guilty, will put the government to its proof.  The trial will be complex.  Defendants, among other things, inserted themselves into a massive, murderous drug conspiracy, including directing a top tier drug dealer, also involved in murder, to abscond the jurisdiction and causing investigators to spend massive amounts of time and resources to locate said individual many months later.

filed these additional briefs (Doc. # 2167 (33 pages); 2186 (9 pages)).  In May 2019, the United States filed its extensive response to Defendants' Brief in Support of their Motions to Dismiss Indictment and Defendant Michael Grady's Motion to Dismiss the Fifth Superseding Indictment (Doc. # 2246, approximately 50 pages).

At the conclusion of the motion proceedings, the Court had heard from seven witnesses on four different days, comprising more than 500 pages of transcript, between July 2018 and February 2019.  The subject matter of the hearing, including testimony and exhibits, was extensive, technical and complex. (See Joint Response (2246), summarizing testimony).  In all, the parties cumulatively provided the Court with hundreds of pages of briefs over a period that exceeded sixteen months. The Court patiently provided a forum for Defendants as they, through a series of strategic decisions, engaged in an extended motion practice of evolving claims and related complex discovery requests, which is evident from a rudimentary review of their pleadings.  (See Joint Response (2246), including pp. 46-48).  During these complex proceedings, the Court declined to grant a motion by the United States to outright deny Defendants' substantive Motion to Dismiss the Indictment filed in November 2018, and instead allowed Defendants to fully litigate their evolving claims. (See Government's Motion to Deny Defendants' Joint Motion to Dismiss, Government's Motion to Quash And/Or Limit Defendants' Joint Subpoenas, and Response in Opposition to Defendants' Joint Motion to Compel, Doc. # 1914, November 16, 2018).

Defendants' bloated and evolving motion practice only added to what was already a complex case, thereby increasing the number and complexity of the issues that the Court ultimately had taken under advisement.  Section 3161(h)(1)(F) provides for the exclusion of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  As previously stated, due to the complex case

finding(s) pursuant to § 3161(h)(7)(B)(ii), the time limits imposed by the Speedy Trial Act do not apply to the time the Court has taken the pending motions under advisement.

The United States maintains its position that there has already been a speedy trial finding, but the Court may supplement the previous speedy trial findings in this matter.  These findings may pertain to the time these complex matters have been under advisement, or any other matter the Court deems relevant.  "Although the Act is clear that the findings must be made, if only in the judge's mind, before granting the continuance … the act is ambiguous on precisely when those findings must be 'set forth, in the record of the case.'" *United States v. Adejumo*, 772 F.3d 513, 521-22 (8th Cir. 2014), *quoting Zedner v. United States*, 547 U.S. 489, 506-07 (2006).  "[A]t the very least the Act implies that those findings must be put on the record by the time a district court rules on a defendant's motion to dismiss under § 3162(a)(2)." *Id. See Adejumo*, 772 F.3d at 522, *quoting United States v. Clifford*, 664 F.2d 1090, 1095 (8th Cir. 1981) ("while a court generally should make the findings required by section 3161(h)(8)(A) (now codified at 18 U.S.C. § 3161(h)(7)(A)) at the time it grants the continuance, the Speedy Trial Act does not require the court to make a contemporaneous record."); *see also United States v. Stackhouse*, 183 F.3d 900, 901 (8th Cir. 1999) (per curiam) ("Contemporaneity is not required … and a subsequent articulation suffices."); *United States v. Bokhari*, No. 3:14-30044-MGM, 2015 WL 6509121, at 2 (D. Mass. Oct. 28, 2015) (the unusual and complex nature of the motion was evident in the extensive briefing and substantial evidence submitted by each party in support of his position).

Nor is there any violation of Defendants' Sixth Amendment speedy trial rights for the reasons set forth in the R&R at 6, and the Response STA (2464), pp. 12-16.

**B.   Motions to Dismiss for Alleged Due Process Violations**

After having conducted complex evidentiary hearings on four days, over a period six months, and considering hundreds of pages of briefing, Judge Baker correctly denied Defendant's baseless motions. Review of the extensive record establishes that there is not a shred of evidence of intentional or unintentional conduct that would warrant dismissal of the indictment on any basis. The evolving arguments made by defendants are without substance, unsupported by the facts, and disregard the substantial evidence corroborating cooperating witnesses.  Accordingly, there is no evidence of bad faith or flagrant misconduct on the part of the government.  Defendants cannot meet their legal burden. As such, Judge Baker properly denied the motions after having granted Defendants considerable leeway to pursue their frivolous claims.  Defendants' Objections to the R&R, like their motions, are entirely meritless.  (See Doc. # 2615, pp. 4-7; 2616, pp. 3-5).

The entirety of the extensive record supports Judge Baker's legal conclusions:

> In this case, the undersigned finds that the Defendants have not been substantially prejudiced by the late disclosure of the cell site data.  First, Defendants have received the data in time for their use at trial and at this point have had access to the data for over two years.  Second, the evidence does not reach the bounds of being exculpatory.  Defendants focus on the fact that the historical cell site data indicates that Grady was in Florida on January 10th and 11th of 2016.  Defendants contend that the cell site evidence contradicts CW-B's statement that he met with Grady on one of those dates.  Defendants label this discrepancy as exculpatory evidence.  Defendant's contention is not a fair reading of the statement's actual wording in the affidavit.  The affidavit uses the word "approximately." The word "approximately" does not mean exactly.  Oxford English Dictionary defines "approximate" as "very near, in position or in character" or "nearly approaching to accuracy; fairly reasonably or correct."  Use of the modifier is important, especially in this case, the cell site data also shows that Grady's cell phone used towers in St. Louis beginning on January 12, 2016.  Further, the statements from the confidential witnesses regarding their meeting with Grady and Dillon in January 2016 were not the only pieces of evidence used to support probable cause for the warrants. Defendants' assertions that the Government's case focuses on encounters with CW-B on those dates is not accurate.  (R&R at 17-18).[2]

---

[2] The Government also refers the Court to the detailed summary of the evidence set forth in its Joint Response (2246), pp. 9-27, 32-38.

Judge Baker correctly concluded that the records are not exculpatory, *supra*.  To the extent Defendants continue to disregard the plain language of the affidavit(s), using "approximately," the Court correctly concluded that their "contention is not a fair reading of the statement's actual wording in the affidavit."  (Doc. # 2616, p. 5; see Joint Response (2246), pp. 18-19).

The records are incriminating and establish Grady's contact with CW-B, CW-C, and Dillon, corroborating the prosecution's theory of the case.  Defendant Grady's mere contact with CW-A's top lieutenant, CW-B, and paramour and helper, CW-C, and bracketed phone contact with Dillon is probative of defendants' relationship with CW-A in the operative time frame.  Moreover, even subject to its considerable limitations, cell site analysis puts Grady's device in relevant geographic areas and times to corroborate accounts provided by CWs A and B during the highly relevant time period between January 13, 2016, and January 15, 2016.  Of all the cell towers in the United States, Grady's device activates at towers in the St. Louis area consistent with general time frames and locations described by CWs A and B.  Considering the totality of the records, there is no basis to conclude the records are exculpatory.   (See Joint Response (2246) pp. 18-27).

Judge Baker also concluded that:

> Third, the undersigned finds credible the testimony of the FBI personnel and St. Louis City officers that the historical cell site data regarding Grady was not the focus of their investigation and they had no recollection of downloading it before Defendants' discovery request. Defendants have presented no evidence beyond speculation that the Government acted in bad faith.

Aside from the Court's observations and credibility determinations, there is a substantial basis to support this conclusion.  The focus of the investigation in February 2016, at the time the order was issued in this case, was to locate CW-A, then a major drug trafficker and fugitive who avoided apprehension during two enforcement actions in January 2016.  (M.Tr., 8-22-18, pp. 37-41, 47,

13

49, 51, 181)  Agent Burke of the FBI also acknowledged that the apprehension of CW-A was a high priority in the investigation.  (M.Tr., 8-22-18, p. 159)  In view of all of the evidence, it is reasonable to believe that investigators were focused on locating CW-A, a major drug dealer and killer who had absconded, not on Grady's past whereabouts.  As such, it is reasonable to conclude that investigators focused on the prospective GPS data, not historical cell site data as to Grady's past locations that would not logically tend to lead them to CW-A's prospective hidden location.

The Court correctly concluded there were no false representations to the grand jury:

> Fourth, defendants have not established that the Government made false representations to the court and the grand jury … Defendants have not presented evidence of actual prejudice.  Whether the prosecution witnesses' testimony may be impeachable does not rise to the level of dismissal of an indictment.  At trial, Defendants can attempt to impeach the confidential witnesses about the dates and times of meetings with the Defendants. (R&R at 17-18).

Defendant Dillon's objection (Doc. # 2615, pp. 5-6) that there is no corroborating evidence of meetings and other evidence presented to the grand jury disregards the totality of the evidence. Defendant proposes that the Court view the evidence, a single question and answer (2615, p. 5) in a vacuum.  Defendants disingenuously ignore the vast amount of interlocking direct and circumstantial evidence that far exceeds the probable cause requirement.  This evidence is explicitly detailed in the Joint Response (2246), pp. 32-38 (See analysis of the record, including Government's exhibits M-12, M-13 and Defendants' exhibits N and O).

Defendant Dillon also advances evidence outside the record of these proceedings referencing the testimony of TFO Gaddy in *United States v. Dillon, et al*., 17 CR 95 RWS (Doc. # 2615, p. 5).  This evidence was not before Judge Baker, nor does it make any difference. Defendant Dillon again disregards the totality of the evidence, which far exceeds the probable cause standard (Joint Response (2246), pp. 32-38).   The totality of the evidence establishes that

14

there is no basis to conclude the prosecution presented false evidence to the grand jury, knowingly or otherwise.

To the extent Defendants contend that the United States has made false representations to the Court, those allegations are also entirely frivolous (Doc. # 2615, pp. 6-7).  These allegations are addressed in the Joint Response (2246), including at pp. 9-13, 38-43.  The record firmly establishes the basis for a mistake on the part of the government, not bad faith.  This includes but is not limited to a technical mistake related to LSite time parameters that allowed Mr. Williams to see Sprint material for only the preceding ninety days.  After speaking with the service representative on November 8 or 15, 2017, Mr. Williams adjusted the parameters of his computer to allow him to view Sprint L-Site cases for the previous three years.  At this time, he was able to view the historical cell site data for (314)766-2083, obtained via the court order in 4:16-MJ-7061SPM.  (M.Tr., 8-21-18, pp. 28-35, 71, 8-22-18, pp. 15-16, 32-35; Government exhibit M-3, Affidavit of James Williams, paragraphs 4-9, 18).

Judge Baker properly denied Defendant Grady's Motion to Dismiss the Fifth Superseding Indictment for prosecutorial vindictiveness and intentional delay.  (R&R at 19-20; Joint Response (2246), pp. 43-50).

## V.    CONCLUSION

For the foregoing reasons, the District Court should adopt the Report and Recommendation and deny Defendant's motions.

Respectfully Submitted,

JEFFREY B. JENSEN
United States Attorney

*s/ Michael A. Reilly*
MICHAEL. A. REILLY, 43908MO
Assistant United States Attorney

15

111 South 10th Street, 20th Floor
St. Louis, MO 63102
(314) 539-2200


**CERTIFICATE OF SERVICE**

I hereby certify that on April 9, 2020, the foregoing was filed electronically to be served upon all counsel of record.

*s/ Michael A. Reilly*
MICHAEL A. REILLY, #43908MO
Assistant United States Attorney

16