**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No.   **4:15-CR-404 HEA/NAB** |
| | ) |
| **MICHAEL GRADY,** | ) |
| | ) |
| **Defendant.** | ) |

# ORDER

This matter is before the Court on Defendant Michael Grady's motion for release from custody ("the motion") [ECF No. 2571].   The Government opposes the motion [ECF No. 2598]. Defendant filed a reply [ECF No. 2612], as well as two supplements, including medical records for care of Defendant's lungs in approximately 1994 [ECF Nos. 2623 and 2628].   The Court held a hearing on the motion, in which counsel for both parties, Defendant, and the Pretrial Services Officer participated [see ECF Nos. 2621 and 2626].

Under the Bail Reform Act,[1] Defendant challenges the pre-trial detention order entered on December 23, 2016 and seeks temporary release from custody.  Mot. at 1-2 [ECF No. 2571]. Because the focus of the motion is the presently existing COVID-19 pandemic which reportedly began in 2020, as it may affect Defendant's age and health, and the situation at the facility where he is detained, the Court considers the motion as seeking relief under 18 U.S.C. § 3142(f) and 18 U.S.C. § 3142(i).

---

[1] Defendant also mentions in the first paragraph of his motion that he seeks relief under the Fifth, Sixth, and Fourteenth Amendments.   Defendant does not, however, further discuss those amendments in his motion and motion-related materials.   Therefore, the Court declines to further address Defendant's request for relief under those Amendments.

With respect to § 3142(i), Defendant relies on the provision stating that, after a court enters an order of detention, a "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." In the motion, Defendant does not seek temporary release to prepare for his defense but seeks temporary release due to his age, his health, the COVID-19 pandemic, and the alleged inability of his place of pre-trial detention to provide him appropriate care.

In response to the motion, the Government points out this is Defendant's fourth challenge to the Court's December 2016 detention order, which was entered pursuant to the rebuttable presumption of detention in 18 U.S.C. § 3142(e) applicable to the cocaine distribution conspiracy charge against Defendant, which Defendant had not sufficiently rebutted, and "because no conditions of release would assure the safety of the community and Defendant's appearance at future proceedings" due to various circumstances, including Defendant's prior criminal history. Urging present circumstances support Defendant's continued detention and based on its prior opposition to Defendant's prior motions challenging the detention order, the Government opposes Defendant's present motion.

<u>Background related to Defendant's pretrial detention</u>

On December 1, 2016, the Government filed a fourth superseding indictment [ECF No. 679] in this August 2015 case which, in relevant part, added five counts against newly added

Defendant Michael Grady ("Defendant").  Specifically, the Government charged that Defendant, acting with others, including Defendant Derrick Terry:[2]

(1) conspired from at least 2012 to the date of the indictment to distribute and possess with intent to distribute more than five kilograms of cocaine (Count 3) and more than one hundred grams of heroin (Count 4) in violation of 21 U.S.C. §§ 841(a)(1) and 846;

(2)  obstructed justice in violation of 18 U.S.C. §§ 2 and 1512(c)(2) (Count 28) and engaged in unlawful flight to avoid prosecution in violation of 18 U.S.C. §§ 2 and 1073 (Count 29) from January 2016 through July 27, 2016, when Defendant Terry fled from this jurisdiction to Dallas, Texas; and

(3) conspired from August 2015 through the date of the indictment to launder money in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(h) (Count 51).  Defendant was arrested and taken into custody on December 2, 2016.  See, e.g., ECF No. 689.

The Government filed a motion for pretrial detention [ECF No. 684] on the grounds:  (1) there was a serious risk Defendant would flee, (2) Defendant was charged (in Count 3) with an offense under the Controlled Substances Act having a mandatory minimum term of imprisonment of ten years and a maximum term of life imprisonment, and (3) Defendant was a danger to the community.  A Pretrial Services Report filed under seal on December 5, 2016, [ECF No. 702] supported the detention of Defendant.

After granting Defendant's request to continue the original December 6, 2016 detention hearing, the Court held the hearing on December 8, 2016 [ECF No. 716]. During the hearing

---

[2]  The Government also charged Defendant Terry with five other offenses in the fourth superseding indictment [ECF No. 680], including two charges of acting with others in drug distribution-related homicides in violation of 18 U.S.C. §§ 2, 924(c) and 924(j) (Counts 5 and 56).

3

Defendant submitted two exhibits, which were filed and are maintained under seal.  See ECF No. 717.  One of those exhibits is an affidavit of a cooperating witness.  See ECF No. 717 at 2-3.

On December 23, 2016, the undersigned issued an order detaining Defendant [ECF No. 789].  The Court concluded the rebuttable presumption under 18 U.S.C. § 3142(e)(3) applied because Defendant was charged by indictment with an offense for which a maximum term of imprisonment of ten years or more was prescribed by the Controlled Substances Act, 21 U.S.C. §§ 801-904, and Defendant had not introduced sufficient evidence to rebut the presumption.  Additionally, the Court concluded that, based on information presented at the detention hearing and consideration of the factors in 18 U.S.C. § 3142(g), the Government proved (1) by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of any other person or the community and (2) by a preponderance of the evidence that no condition or combination of conditions would reasonably assure Defendant's appearance as required.

As support for the detention order, the Court found Defendant was subject to a lengthy period of incarceration if convicted, Defendant had a prior criminal history, as well as a history of violence or use of weapons, and Defendant had failed to appear in court as ordered.  More specifically, the Court explained:

> The Government charged Defendant with five counts in a large multi-defendant case as follows:  violation of 21 U.S.C. § 846 (conspiracy to distribute in excess of 5 kilograms of cocaine); 21 U.S.C. § 846 (conspiracy to distribute heroin); 18 U.S.C. § 1512 (obstruction of justice); 18 U.S.C. § 1073 (unlawful flight to avoid prosecution); and 18 U.S.C. § 1956 (conspiracy to commit money laundering).  One of the counts carries a penalty of incarceration not less than ten years or more than life.  Two of the counts carry a penalty of incarceration of not more than twenty years.  The Government moved for Defendant's detention on the grounds that there is a serious risk Defendant will flee and that Defendant is a danger to the community.  The Government also advises that the statutory presumption of detention applies to one of Defendant's charges.  With respect to

4

the instant charges, the Government alleges that among other things, Defendant counseled a co-defendant to flee the jurisdiction. The co-defendant is charged, among other things, with unlawful use of a firearm in furtherance of a drug trafficking crime resulting in death.

The Court held a detention hearing on December 8, 2016. Prior thereto, Defendant and his counsel were provided with a copy of the Pretrial Services Report. Defendant did not challenge the factual contents of the Pretrial Services Report and the Court adopts it herein.

The Government asserts in support of its motion that Defendant has an extensive criminal record. Defendant's criminal record includes a felony conviction for possession of a controlled substance in 1973; a robbery conviction in 1974; a forgery conviction in 1982; a leaving the scene and resisting arrest conviction 1982 and 1983; and a federal conspiracy to possess with . . . intent to distribute heroin in 1999. Defendant served five years in the Missouri Department of Corrections on the 1982 forgery case. On the 1999 federal case, Defendant was sentenced to 112 months and five years of supervised release. He was discharged from supervised release in 2010. In addition to the convictions, Defendant has been arrested numerous times for assaults as well as for robbery, burglary, stealing, resisting arrest and possession. Defendant has also incurred numerous traffic violations. Finally, Defendant has failed to appear in the following municipalities: Pagedale, Hillsdale, Velda City, University City, St. Louis County, Pine Lawn, Clayton, Maplewood, City of St. Louis and Madison County, Illinois.

Defendant has substantial ties outside of St. Louis. His residence is located in Florida. Defendant travels regularly to St. Louis to attend to his business in which he and a co-defendant provide legal services as paralegals.

At the hearing, the Government focused on the severity of the potential sentence as an incentive to flee and also the connection between the nature of Defendant's charges, involving, among other things, assisting another in an unlawful flight to avoid prosecution, and the risk of non-appearance. The Government also argued that Defendant is a danger to the community because of his record of violent offenses and drug convictions.

At the hearing, Defendant's counsel very forcefully argued on behalf of Defendant noting that both his convictions and failures to appear were remote. Counsel also asserted that while incarcerated on his 1999 federal case, Defendant was a model inmate and that he was released early from supervised release. Counsel further noted that Defendant's seven siblings live in St. Louis as well as children and grandchildren. Defendant filed an affidavit (under seal) at the detention hearing. The Court has reviewed the affidavit.

>       Given the nature of the charges and the potential sentence as well as Defendant's history of serious convictions, arrests, and failures to appear, the Court concludes by both clear and convincing evidence, as well as a preponderance of the evidence, that no condition or combination of conditions would assure Defendant's appearance or the safety of the public. Accordingly, the Court grants the Government's Motion for Pre-Trial Detention.

Order of Detention Pending Trial [ECF No. 789].

In early January 2017, Defendant, through counsel, filed a motion for revocation or amendment of the detention order pursuant to 18 U.S.C. § 3145(b) [ECF No. 821].[3] Defendant pointed out: he had not been indicted until approximately sixteen months after the case was filed; he "was arrested at his business office in St. Louis without resistance or incident"; and no "firearms were found on or around Defendant's person at the time of his arrest or in his business office during a post-arrest search." Defendant asserted he rebutted the presumption of detention at the detention hearing "with facts set forth in the Pre-trial Services Bail Report which demonstrated that he is not a flight risk and does not pose a risk to the safety of the community and other persons." Specifically, Defendant argued the presumption was rebutted by the following:

>    a. The Section 3142(e)(3) rebuttable presumption only arises from one Count of the indictment (Count 3).
>
>    b. The weight of the evidence against Defendant on any of the charges (including Cou[n]t 3) could not be very much because this Defendant was not added to the indictment until 16 months after the original indictment was returned.
>
>    c. In connection with this indictment, no drugs of any kind have been seized from Defendant or from premises under his control. Defendant has not sold any drugs in connection with this indictment. Thus, the drug amount attributed to this Defendant in Cou[n]t 3 from which the 10[-]year minimum mandatory sentence (and resultant rebuttable presumption) arises is without factual foundation.

---

[3] Additionally, within a week after entry of the detention order, Defendant had filed a pro se motion for reconsideration of the detention order [ECF No. 802], seeking release on the ground the Government had not provided "authentic evidence and witness testimony connecting him to the alleged offenses." The next day the Court denied the motion without prejudice to refiling by Defendant's counsel. Order, filed Dec. 29, 2016 [ECF No. 804].

6

    d.   Defendant had no criminal convictions since 1999.

    e.   Defendant was a model prisoner during his Federal incarceration.

    f.   Defendant was released from supervised release early due to his good conduct during supervision.

    g.   Defendant's failures to appear occurred more than 30 years ago.

    h.   Other than a 1974 robbery conviction (when Defendant was 18 years old), Defendant does not have a history of violent behavior.

    i.   Defendant did not resist arrest or attempt to evade arrest on December 2, 2016.

    j.   No weapons were found on Defendant or at his office on December 2, 2016.

    k.   Defendant has operated a paralegal business in St. Louis since 2011.

    l.   Defendant has substantial family ties to the St. Louis area, with seven siblings living here in addition to children and grandchildren.

    m.   Defendant aids in the care of a disabled child in St. Louis.

    n.   Defendant could not have aided a Co-Defendant in avoiding arrest, because there is no evidence that Defendant knew or could have known that this person had been indicted.

    o.   Defendant does not have any ties or resources outside of the United States.

Def.'s mot. revocation or amendment of order of pre-trial detention, para. 6 [ECF No. 821]. Based on those facts, Defendant asked the Court to set "a bond in the amount of $10,000.00 cash or surety" with reasonable conditions of release. Id. at 3; Def's mem. supp. mot. revocation or amendment of order of pre-trial detention at 7 [ECF No. 833]. In the memorandum supporting the motion, Defendant added that: he earns "an annual salary of about $30,000.00" from his paralegal business in St. Louis; he "was born and raised in St. Louis, Missouri"; he "maintains a

7

Florida residence with his wife"; to operate his business, he "is in [the St. Louis] area approximately 2-3 weeks per month"; his "multiple failures to appear [arose] in municipal courts to answer minor municipal charges"; he had not yet received discovery material, although he understood "that Title 3 wiretaps may have been used by the Government during this investigation" and that "the Government has not intercepted any incriminating communications by him"; he "could not have aided a Co-Defendant in avoiding arrest, because there is no evidence that Defendant knew or could have known that this person had been indicted [because the indictment] was sealed and his alleged flight occurred before this Defendant could have known of the indictment"; Defendant "was not on parole, probation or other release pending further proceedings, at the time of the charged offenses"; and this case has been designated a complex matter, which extends the time before trial and, therefore, the length of Defendant's pre-trial detention.  Def.'s mem. supp. mot. revocation or amendment of order of pre-trial detention at 2-3, 5-6 [ECF No. 833].

The Government filed (under seal) its opposition to Defendant's motion to revoke or amend the detention order [ECF No. 834].  Pursuant to 18 U.S.C. § 3145(b), the Honorable Henry E. Autrey, the United States District Judge having original jurisdiction over the charged offenses, overruled and denied Defendant's motion for reasons set forth in the record during the hearing he held on the motion.  See Order [ECF No. 827]; Minute entry, dated Jan. 19, 2017 [ECF No. 838].

In July 2017 and by new counsel,[4] Defendant filed a second motion to revoke or amend the pre-trial detention order under 18 U.S.C. § 3145 [ECF No. 1066], along with a memorandum and exhibits, filed under seal, in support of the motion [ECF Nos. 1067, 1068].  In his second

---

[4] Defendant's counsel changed in June 2017.  See docket text order [ECF No. 1040] granting motions to withdraw and for pro hac vice status [ECF Nos. 1038 and 1039].

8

motion, Defendant asserted that, unlike the first motion to revoke and amend the pre-trial detention order, he had received and reviewed discovery materials and:

> 6. . . . . As laid out further in the . . . Memorandum [supporting the motion], the entirety of the government's evidence against [Defendant] produced thus far is an uncross-examined and uncorroborated statement from a co-defendant.  There are no other reports or documents suggesting that [Defendant] engaged in the conduct he is charged with in the fourth superseding indictment.  More importantly, no evidence has been produced that [Defendant] engaged in the conduct alleged in Count 3 of the fourth superseding indictment, the count that carries the presumption in this case.
>
> 7. When the lack of evidence is considered alongside the facts about [Defendant]'s personal history and characteristics already presented to the Court, this Court should find that there are conditions of release that will reasonably insure [Defendant]'s appearance and compliance with all orders of the Court, and protect the community.

Def.'s second mot. to revoke or amend the pre-trial detention order paras. 6 and 7 [ECF No. 1066].

The Government opposed the motion through a response it filed under seal [ECF No. 1080].  Judge Autrey denied the motion during the sealed motion hearing he held on the motion and by a docket text order entered after the hearing [ECF Nos. 1106 and 1107].

On December 20, 2018, the Government filed a fifth superseding indictment [ECF No. 1990] that charged Defendant in four counts (Counts 31, 32, 33, and 34) with offenses similar to those set forth in the five counts of the fourth superseding indictment against Defendant, and added a new charge that Defendant engaged in witness tampering (Count 35).  Specifically, with respect to the similar offenses, the Government charged Defendant with acting with others to:

(1) conspire from at least 2012 to the date of the indictment to distribute and possess with intent to distribute more than five kilograms of cocaine and an unspecified amount of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 31);

(2) obstruct justice in violation of 18 U.S.C. §§ 2 and 1512(c)(2) (Count 32) and engage in unlawful flight to avoid prosecution in violation of 18 U.S.C. §§ 2 and 1073 (Count 33) from January 2016 through July 27, 2016, when Derrick Terry fled from this District; and

(3) conspire from August 2015 through the date of the indictment to launder money in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(h) (Count 34). With respect to the new witness tampering charge against Defendant, the Government alleged that between December 2, 2016, and December 8, 2016, Defendant knowingly attempted to influence the testimony of a cooperating witness in this case by

> (1) contacting a confined cooperating witness; (2) requesting that the cooperating witness create an affidavit specifying that . . . a particular financial transaction did not occur; (3) directing the cooperating witness to include other information in an affidavit; and (4) . . . causing said affidavit to be filed in a court proceeding in this matter on or about December 8, 2016

in violation of 18 U.S.C. § 1512(b)(1) (Count 35).

In February 2019, Defendant filed a motion to reconsider detention and for release pending trial under "18 U.S.C. § 3145(b) to (i), and the Due Process Clause, for a detention hearing in this case and release [of Defendant] on bond subject to any conditions that the Court deems necessary" [ECF No. 2087]. In his motion Defendant reiterated his past challenges to the detention order and added his assertion that "being out on bond would give [Defendant a] better opportunity to consult with his attorney, who is located in Chicago, and to review discovery, which is voluminous." Id. para. 10. In his brief supporting the motion, Defendant provided some new detail about: his daughter's "rare neurological disorder" and his responsibility, prior to his arrest, "for taking his daughter to her doctor's appointments"; his "family history of colon cancer"; and his position regarding information disclosed during "a lengthy evidentiary hearing on his Motion to Dismiss indictment" and the "litigating [of] a Motion to Compel production of grand jury material." Id.

10

at 6.  Defendant also challenged his "prolonged pretrial detention [as] excessive and consequently punitive in violation of the Due Process Clause of the Fifth Amendment."  Id. at 7; see also id. at 7-16.

The Government opposed the motion in a response filed under seal [ECF No. 2110]. United States District Judge Autrey denied the motion in an Opinion, Memorandum and Order filed May 6, 2019 [ECF No. 2240].  In explaining his decision, Judge Autrey stated, in relevant part:

> The court has reviewed the basis for the Order of Detention several times. Each time Defendant has asserted the same essential concerns and arguments as here.  Now the severity of the offenses is increased again with the addition of the witness tampering offense.  This offense establishes another basis for concluding there exists "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness . . . ." pursuant to Title 18 U.S.C. § 3142(f)(2)(B).

\*     \*     \*

## ANALYSIS

> The history and characteristics of the charges and evidence is that defendant provided counsel to a highly tiered drug trafficker in Counts 32 and 33.  The highly tiered drug trafficker is alleged to have used a firearm resulting in death.

\*     \*     \*

> No material circumstances have changed in Defendant's favor.  He has not provided any information that is material to or has a substantial bearing on whether he should remain detained.   He has not met his burden.
>
> The Court concludes by clear and convincing evidence that the release of the defendant on bond would pose a danger to the community and finds by a preponderance of the evidence that there is considerable flight risk in releasing the defendant on bond.
>
> The relevant information relative [to] the charges and their circumstances looming over the head of the defendant suggests, upon conviction, he would be subject to a considerable period of incarceration.

11

> The Court finds the release of the defendant on bond would involve a risk of non-appearance.
>
> The Court further finds the release of the defendant on bond would constitute a danger to the community.
>
> It is the further finding of the Court that there are no conditions or combination of conditions that will reasonably assure the safety of the community and the appearance of the defendant as required if he were released on bond.

Id. at 2, 3-4.

<u>Defendant's presently pending motion</u>

Defendant now challenges the detention order and seeks his release due to the existence of the 2020 COVID-19 virus pandemic and his present circumstances which he alleges include: (1) his place of pre-trial detention, the City Jail in Alton, Illinois, which allegedly lacks proper facilities and procedures to maintain Defendant's health; (2) his age, which is over sixty years old; and (3) the reported fact he has only one lung. Arguing once again that he has "substantial family support in St. Louis, as well as his own home that he could live in under home incarceration or electronic monitoring," Defendant "requests that he be released on a $10,000 cash or surety bond with reasonable conditions, such as a home confinement with electronic monitoring."[5] Mot. at 10 [ECF No. 2571].

In addition to its reasoning in response to each of Defendant's prior motions challenging the Court's detention order, which the Government reiterates in response to Defendant's present motion, the Government contends that Defendant: (1) "does not challenge the Court's

---

[5] In his reply [ECF No. 2612], Defendant proposes the following conditions for his release: 1. electronic monitoring with home confinement at his St. Louis home, "2. [r]eporting to pretrial services as directed, 3. [r]efraining from the possession of firearms or dangerous weapons, 4. [r]efraining from the excessive use of alcohol or controlled substances that are not prescribed by a doctor, [and] any other conditions the Court deems appropriate." Id. at 8.

determination that he poses both a danger to the community and a flight risk" and (2) "does [not] attack the presumption that applies in favor of detention," both of which support the Court's December 2016 detention order.  Gov't response Def.'s mot. at 1, 3, 4 [ECF No. 2598].  Moreover, the Government argues, "there is no evidence that any detainee at the Alton City Jail has been exposed to COVID-19, and jail administrators have implemented proactive measures to prevent the transmission of the virus."  Id. at 2, 6-7.  Finally, the Government advises that Defendant is now the subject of a charge alleging he "tampered with a witness while being detained on corresponding charges in Count 32 and 33 that he counseled a high level drug trafficker, [who was] charged with use of a firearm resulting in death, to abscond this jurisdiction in an effort to influence this judicial proceeding."  Id. at 5.

During the hearing on Defendant's pending motion, the Court reiterated it would not reconsider issues that have been presented and challenged on several occasions, including three times when Judge Autrey considered Defendant's detention.  Instead, the Court stated it intended to focus on the recently received and new information regarding Defendant's health presented in Defendant's pending motion and related materials.

Counsel for both parties presented their positions during the hearing.  With respect to whether the new information regarding the COVID-19 pandemic and Defendant's age, health, and detention facility have a material bearing on whether Defendant poses a danger to the community, Defendant's counsel urged it did.  Specifically, defense counsel argued that the increased probability of acquiring COVID-19 in a jail and the need to use resources to care for a jailed detainee who acquired COVID-19, results in a danger to the community (through the lack of sufficient resources to assist those with COVID-19 in the non-jailed community based on use of those resources to care for jailed individuals with COVID-19) and that danger would be lessened

13

by Defendant's release to home confinement.  While Defendant's counsel argued there is no indication that the Alton City Jail tested for the presence of COVID-19, counsel did not present information or evidence of any COVID-19 present in staff or detainees at the Alton City Jail while Defendant has been detained there.

In its response to Defendant's motion, the Government set forth information regarding COVID-19 protocol and procedures at the Alton City Jail.  <u>See</u> Gov't response to mot. at 6-7 [ECF No. 2598].   During the hearing, the Government advised that it had spoken with personnel of the Alton City Jail the day before the hearing and learned (1) there still are no COVID-19 cases reported there and (2) they have added a new screening procedure (requiring the staged entry of new prisoners through evaluation, fourteen-day isolation, and re-evaluation before placement with others), although it is not clear when that screening process began.

Defendant, testified and stated that, based on his experience at the Alton City Jail, the staged entry procedure and other aspects of COVID-19 protocol are not instituted or maintained at the Alton City Jail.  While Defendant reported he had complained to the physician accessible at the Alton City Jail about various concerns and had not received treatment he considered proper, Defendant did not state that he presently has symptoms pertinent to a COVID-19 diagnosis.

To the extent Defendant relies on having only one lung and emphysema, the medical records submitted by Defendant show lung damage and medical treatment in the early 1990's, including surgery to remove a cyst on a lung and inflation of the lung adversely affected by the cyst in 1994.  Although the records indicate Defendant has a damaged lung, the records do not demonstrate that Defendant has only one lung or emphysema.  Nor do the records establish that Defendant has any ongoing lung disease, lung condition, or breathing-related infirmity. Defendant did not submit other medical records or evidence to establish that his health may be

more adversely affected by the general existence of the COVID-19 pandemic, which is not shown to exist in the Alton City Jail at this time. The Government noted during the hearing that the Pretrial Services Report does not reflect that Defendant reported any health issues other than that he had "high blood pressure and is prescribed Lisinopril" and Defendant "denied any other medical issues" after his December 2, 2016 arrest. See ECF No. 702 at 3.

With respect to whether the new information regarding the COVID-19 pandemic and Defendant's age, health, and detention facility have a material bearing on whether Defendant constitutes a potential flight risk, Defendant's counsel noted the presently imposed lockdown in the community related to COVID-19, as well as the Court's imposed conditions related to the monitoring of Defendant's home confinement, would not permit Defendant's flight from this jurisdiction.

Additionally, Defendant's counsel raised in the hearing, but not in the motion or supporting memorandum, that she supported Defendant's release based on the need to prepare his defense. In particular, defense counsel, whose office is not close to the Alton City Jail, reported experiencing difficulty communicating with Defendant at the Alton City Jail at this time, because: (1) Alton City Jail allowed fifteen-minute telephone calls, but not other methods of communication, with counsel, and (2) she preferred to avoid in-person contact at jails (due to the COVID-19 pandemic).

The Pretrial Services Officer stated during the hearing that she supported Defendant's continued detention.

### **Section 3142(f)**

18 U.S.C. § 3142(f) permits a court to reopen a detention hearing and consider information "not known to the movant at the time of the hearing and that has a material bearing on the issue

[of] whether there are conditions of release that will reasonably assure the appearance of [defendant] as required and the safety of any other person and the community."[6] A health risk such as COVID-19 "can indeed constitute new information having a material bearing on whether there are conditions of release that will reasonably assure the appearance of detained defendants and secure the safety of the community" under Section 3142(f). See United States v. Martin, No. PWG-19-140-13, 2020 WL 1274857 at *2 (D. Md. Mar. 17, 2020) (denying appeal of detention order without a hearing). However, the new information must be "sufficient to overcome the key factors on which the initial order of detention w[as] predicated[.]" United States v. Rush, 4:14-CR-88 RWS(SPM), 2017 WL 6541436, at *3 (E.D. Mo. Dec. 1, 2017). Stated a different way and in the current context, "[a] defendant's concerns that he or she is facing heightened COVID-19 risks while incarcerated do not typically factor into a § 3142(f) analysis because the risk of harm to the defendant does not usually bear on whether the court can fashion conditions of release that will reasonably assure that the defendant is not a risk of non-appearance or a risk of harm to any others or the community." United States v. Calvert, No. 19-40068-03-HLT, 2020 U.S. Dist. Lexis 64135, 2020 WL 1847754 at *2 (D. Kan. April 13,2020) (emphasis in original). Thus, when evaluating whether to reopen a detention hearing under § 3142(f), "courts often then turn to whether the COVID-19 pandemic alters the individualized assessment based on the factors set forth in 18 U.S.C. § 3142(g) of the Bail Reform Act." United States v. Bracey, No. 15-CR-235(2)-JNE-TNL, 2020 U.S. Dist. Lexis 62667, 2020 WL 1809187, at *3 (D. Minn. Apr. 9, 2020).

---

[6] 18 U.S.C. § 3142 (c)(3) (relied on by Defendant in his motion) governs modifications of release orders. 18 U.S.C. § 3145 governing motions for revocation or amendment of a detention order and appeals from (not reconsiderations of) detention orders.

16

Here the crux of Defendant's motion is his assertion that a pre-existing medical condition combined with the COVID-19 pandemic supports release. As an initial matter, Defendant submitted medical records that appear to substantiate that Defendant had lung surgery in 1994 to alleviate a lung problem. The surgery appears to have been successful and Defendant has produced no additional medical records suggesting that he has any current issues with his lungs.

With respect to Defendant's concerns about the Alton City Jail, the Court has no information before it suggesting that there are particular issues at this facility. More specifically, Defendant has not established that there are specific problems with the manner in which the jail is addressing the pandemic threat. Nor has Defendant demonstrated that there is a significant (or any) number of infected individuals at Alton City Jail.

Even taken as true that Defendant has a current lung problem, he has not addressed the central issue faced by the Court, namely, whether the COVID-19 pandemic materially changes the previous determination that Defendant is a flight risk and danger to the community. As the above history details, the issue of Defendant's danger and flight risk has been analyzed multiple times by this Court. The record is devoid of any support for a finding that the information Defendant now presents (which was in fact known to him at the time of his initial and subsequent hearings) and/or the COVID-19 pandemic lessens either Defendant's flight risk or risk to the community. Therefore, Defendant's request for reconsideration pursuant to 18 U.S.C. § 3142(f) is denied.

## Section 3142(i)

Section 3142(i) provides that a "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States Marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." A defendant bears the burden of

establishing circumstances warranting release under § 3142(i).  See United States v. Buswell, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013).

For purposes of the "compelling reason" basis for release under Section 3142(i) "a defendant should not be entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation."  United States v. Boatwright, No. 2:19-cr-00301-GMN-DJA, 2020 U.S. Dist. Lexis 58538, 2020 WL 1639855, at *5 (D. Nev. Apr. 2, 2020).  Rather, "the court must make an individualized determination as to whether COVID-19 concerns present such a compelling reason in a particular case that temporary release is necessary." Id.

In addressing the question of criteria for release under § 3142(i) in the context of COVID-19, the court in United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *2-3 (D. Kan. Mar. 25, 2020), articulated four factors to evaluate whether a defendant satisfies the "compelling reason" requirement under § 3142(i):

> (1) the original grounds for the defendant's pretrial detention; (2) the specificity of the defendant's stated COVID-19 concerns; (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.  The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary."

Id. at *3.

The original grounds for Defendant's detention are discussed at length above.  The Court has reconsidered issues related to flight risk and danger to the community on multiple occasions.  The COVID-19 pandemic does not change Defendant's risk of flight or risk to the community.

With respect to the specificity of Defendant's "stated COVID-19 concerns," Defendant primarily relies on his age and his health.  There is no question that Defendant's age places him in a higher risk category.  See https://www.cdc.gov/coronavirus/2019-ncov/faq.html (last visited

18

May 8, 2020). It is not clear whether a lung surgery that occurred in 1994 to correct a lung problem places Defendant at higher risk. Defendant presented no support for a finding that he has a chronic lung disease. Indeed the surgery appears to have successfully corrected his then-existing lung problem.

Defendant states that because his life is "on the line" there is a powerful incentive to abide by release conditions. Defendant also claims that elderly and chronically ill individuals "pose a lower risk of violating supervision." [ECF No. 2571]. While this may be true, Defendant was "elderly" and allegedly "chronically ill" at the time he was charged with this case. And the Court has already concluded in previous reviews of Defendant's detention that a bond with conditions, such as home confinement, is not sufficient to mitigate Defendant's flight risk or risk to the community.

The final Clark consideration is the likelihood that Defendant's release would increase the COVID-19 risks to others. Neither the Government nor Defendant has addressed this factor. Thus, the record does not contain sufficient information to support a conclusion regarding this factor.

The Court is sensitive to the risk posed to Defendant from COVID-19 while Defendant is incarcerated. However, the risks to Defendant if he is released are also considerable. Because temporary release under 18 U.S.C. § 3142(i) is only granted in very limited situations, including for instance where a defendant is suffering from a terminal illness or serious injuries and here Defendant has not met his burden demonstrating a compelling reason for temporary release, Defendant's motion for release under 18 U.S.C. § 3142(i) is denied. See Bracey, supra at *5.

Accordingly, after careful consideration,

**IT IS HEREBY ORDERED** that Defendant's motion [ECF No. 2571] is **DENIED**.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 8th day of May, 2020