UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:15CR404 HEA |
| ) | |
| MICHAEL GRADY, ) | |
| ) | |
| Defendant. ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is once again before the Court on Defendant Michael Grady's Motion for Substitution of Counsel, [Doc. No. 2887]. The Government filed a response opposing the motion, Defendant filed a reply thereto, and the Government filed a sur-reply with leave of Court, and Defendant filed a sur-reply to the Government's sur-reply. For the reasons set forth below, the Motion is denied.

**Defendant's Previous Motions For Substitution of Counsel**

Defendant filed this motion seeking to substitute attorney Beau Brimley as his attorney in lieu of Court appointed counsel. The instant motion is in essence Defendant's challenge to Judge Baker's finding that a potential conflict exists in counsel's representation of Defendant Grady.

In her order of March 22, 2017, Judge Baker detailed Mr. Brindley's involvement with several defendants involved in this matter and another matter in which Defendant Grady was involved:

> Brindley has a history with this case. On August 26, 2016, he was admitted pro hac vice to represent defendant Derrick Terry. At that point, Grady had not yet been indicted. On December 1, 2016, a Fourth Superseding Indictment was filed charging Grady and Oscar Dillon, III as codefendants with Terry. [Doc. #680.] Grady and Dillon hold themselves out as "paralegals" and Brindley has had a long-standing professional relationship with Grady who has referred cases to Brindley, performed investigative services for him, and, in this case, facilitated Terry hiring Brindley. Following a conflict hearing on December 2, 2016, the undersigned disqualified Brindley from representing Terry based on a serious, unwaivable potential for conflict.
>
> On February 3, 2017, Brindley filed the instant motion seeking to represent Grady. The undersigned held a hearing on February 24, 2017 where both Brindley and Grady testified about the nature of their relationship and about Brindley's prior representation of Terry. Although Brindley stated that the only work he did on Terry's case was related to the conflict issue, he further testified that he did not return the substantial retainer that he received from Terry. Grady testified that he wished to waive any potential conflict of interest and signed a waiver form. Grady and Dillon were later indicted in a separate case, along with a Roy William Burris, Jr. (4:17-cr-95 RWS PLC). [Doc. #2.] On March 3, 2017, Brindley entered his appearance in that case on behalf of Burris.
>
> Brindley's attempts to represent Terry and Grady consecutively and Grady and Burris simultaneously weave a tangled web indeed. Having been retained and then disqualified from representing Grady's codefendant in this case, Brindley now seeks to represent Grady in this matter, while attempting to represent another of Grady's codefendants in a separate case. "[T]he district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat v. United States*, 486 U.S. 153, 163,

2

108 S. Ct. 1692, 1699, 100 L. Ed. 2d 140 (1988). Having conducted an inquiry into the propriety of Brindley's representation of Grady, the undersigned finds that there is a "serious potential for conflict," *Wheat*, 486 U.S. at 164, and that a waiver would not adequately protect the interests of Grady and Terry, the "integrity of the judicial proceeding," and "public confidence in the legal profession," *United States v. Agosto*, 675 F.2d 965, 969 (8th Cir. 1982). Therefore, the undersigned will deny Defendant's Motion to Substitute Counsel.

## Analysis

Federal courts have an independent interest in ensuring that criminal trials are conducted within ethical standards of the profession and that legal proceedings appear fair to all who observe them. A district court is given substantial latitude in refusing conflict waivers. *Wheat,* 486 U.S. at 163. "The Sixth Amendment to the Constitution guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right...to have the Assistance of Counsel for his defense.'" *Id*, at 158. As a general rule, "defendants are free to employ counsel of their choice and the courts are afforded little leeway in interfering with that choice." *United States v. Edelmann*, 458 F.3d 791, 806 (8th Cir. 2006).

However, this right of a criminal defendant to retain counsel of his choice is not absolute. "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat,* 486 U.S. at 159 (citing *Morris v. Slappy*, 461 U.S. 1, 13-

3

14 (1983); *Jones v. Barnes*, 463 U.S. 745 (1983)). Although a defendant is entitled to waive his right to conflict-free counsel, the court may disqualify a conflicted attorney despite a defendant's voluntary, knowing, and intelligent waiver if the court finds that allowing the representation to proceed would obstruct orderly judicial procedure or deprive the court of its inherent power to control the administration of justice. *See Edelmann*, 458 F.3d at 806, *see also Wheat,* 486 U.S. at 163 ("district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses). Therefore, courts must balance the defendant's right to counsel of his own choosing against the court's interest in the administration of justice. *Edelmann*, 458 F.3d at 806.

In *Wheat*, the Court addressed a question similar to that presented in the present case—"the extent to which a criminal defendant's right under the Sixth Amendment to his chosen attorney is qualified by the fact that the attorney has represented other defendants charged in the same criminal conspiracy." *Id*. at 159. In that case, the Court rejected the proposition that "waivers by all affected defendants [necessarily] cures any problems created by the multiple representation." *Id.* at 160. Rather, the Court affirmed a district court's discretion

4

to reject or accept a waiver of a conflict of interest, based on the informed judgment of the court, after an evaluation of the facts and circumstances of a particular case. *Id.* at 164. The Court noted trial courts have a duty to inquire into potential conflicts of interests in the context of multiple representation situations, and in so doing, "face the prospect of being 'whip-sawed' by assertions of error no matter which way they rule." *Id.* at 161. If a district court permits the representation to proceed, despite a potential conflict, and counsel's advocacy is impaired as a result, a defendant may claim he received ineffective assistance of counsel. *Id.* (citing *Burger v. Kemp*, 483 U.S. 776 (1987)). "On the other hand, a district court's refusal to accede to the multiple representation may result in a challenge" to a defendant's right to counsel of his choice, under the Sixth Amendment. *Id.* Therefore, "where a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of a waiver...." *Id.* at 162.

In *Wheat*, the Court recognized that, in the pretrial context, the relationships between defendants "are seen through a glass, darkly" and the "likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials." *Id.* The Court further recognized, "[a] few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants.

5

These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics." *Id.* at 162-63. Therefore, district courts are given "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or not burgeon into an actual conflict as the trial progresses." *Id.* at 163.

Further, a court may, in its discretion, disqualify attorneys for case-management considerations. Courts have "wide latitude" in balancing a defendant's right to choice of counsel against the needs of its calendar, fairness to all parties, and the parties' and the public's interest in the efficient administration of justice.

A court may also need to inquire if separate counsel is needed when an attorney represents more than one codefendant. *Id*. at 160 (citing *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978)). The Supreme Court rejected Wheat's argument that a waiver by all affected codefendants cures any problems created by multiple representation, instead finding that "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id*. "Not only the interest of a criminal defendant but the institutional interest in the

rendition of just verdicts in criminal cases may be jeopardized by unregulated multiple representation." *Id*.

*Wheat* further held a district court must be allowed "substantial latitude" in refusing waivers of conflicts of interest in cases with actual conflicts and also those where a potential for conflict exists. *Id*. at 163. Although prosecutors may seek to "manufacture" a conflict, the Supreme Court found that "trial courts are undoubtedly aware of this possibility and must take it into consideration along with all of the other factors which inform this sort of a decision." *Id*. Thus, the Supreme Court held "the District Court's refusal to permit the substitution of counsel in this case was within its discretion and did not violate [Wheat's] Sixth Amendment rights." *Id*. at 164. It further stated there is a presumption in favor of a defendant's counsel of choice, but that presumption "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Id*.

Judge Baker found a serious potential for conflict in this case. Attorney Brindley's protestations to the contrary do not alleviate Judge Baker's or this Court's concerns. All involved in any criminal trial must diligently protect the integrity of the judicial system. An outsider looking at the proceedings thus far may query why Attorney Brindley so strenuously seeks to continue representation

7

of Defendant Grady, when Judge Baker observed a potential conflict in this case with his desire to represent two other defendants associated with Defendant Grady.

Moreover, the Court has appointed counsel to represent Defendant Grady in the soon approaching trial. The matter is set for trial in March. The case involves numerous defendants; some defendants may testify in the case, and there is a need to resolve this case in the most expeditious manner as possible in light of the COVID-19 pandemic. Substitution of Attorney Brindley may hinder the orderly administration of this case.

Although Defendant Grady argues that there *is* no conflict, based on the record and facts before the Court, the Court is unpersuaded that substitution is appropriate with respect to this defendant in this case at this time. While Defendant Grady questions the Government's late disclosure that Attorney Brindley may be called as a witness, the Court cannot say that the Government has misrepresented that it may call him as a witness. Indeed, the decision of whether to call witnesses and the time when that decision is made is within the trial strategy of trial counsel. Defendant Grady's suppositions are unpersuasive.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Grady's Motion for

Substitution of Counsel, [Doc. No. 2887] is denied.

    Dated this 13th day of January, 2021.

                                                        _____
                                                     HENRY EDWARD AUTREY
                                       UNITED STATES DISTRICT JUDGE